[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13047
Non-Argument Calendar
_____

D.C. Docket Nos. 0:10-cv-60080-MGC,
0:04-cr-60090-MGC-1

DEVON TOEPFER,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2013)

Before CARNES, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Devon Toepfer, a federal prisoner serving a 140-month sentence for multiple

drug offenses, appeals the district court's denial of his 28 U.S.C. § 2255 motion to

vacate sentence.  The district court granted a certificate of appealability on three of Toepfer's claims for collateral relief, which alleged that he received ineffective assistance of trial and appellate counsel and that he was denied due process because his decision to forego a guilty plea and proceed to trial was involuntary.

## I.

In April 2004 a federal grand jury indicted Toepfer and four codefendants, including his brother Jeffrey Toepfer, with conspiring from May 1994 through July 2003 to manufacture and possess with intent to distribute at least 1,000 marijuana plants (Count 1).  See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.  Toepfer was also charged with manufacturing and possessing at least 1,000 marijuana plants (Count 2), as well as three more marijuana-related counts, two counts of distributing diazepam, two counts of making false statements in a mortgage application, and one count each of obstructing justice and money laundering.

Apart from his arraignment, Toepfer was given two concrete opportunities to enter a guilty plea.  In October 2005 the government sent his trial attorney, Fred Haddad, a written plea offer, the terms of which required Toepfer to plead guilty to all counts except those related to mortgage fraud and his brother to plead guilty to all counts with which he was charged.  In exchange for both their guilty pleas, the government agreed that it would not seek a sentencing enhancement that would double Jeffrey's mandatory minimum sentence, and would recommend a two-level

2

acceptance-of-responsibility reduction under the sentencing guidelines for both defendants. The government noted that Toepfer would also avoid a potential two-level guidelines enhancement for obstruction of justice by pleading guilty. Under the plea offer, Toepfer faced a 10-year mandatory minimum sentence. See 21 U.S.C. § 841(b)(1)(A)(vii). He rejected that offer and proceeded to trial.

On December 5, 2005, just before the jury was sworn in, the trial judge advised Toepfer in open court that, if he was found guilty of possessing more than 999 marijuana plants, he would be subject to a 10-year mandatory minimum sentence and the court would "have no discretion as to [his] sentence" and "would be bound to any finding that the jury makes." If, however, he entered a guilty plea, the court explained that it could make a finding of fewer than 1,000 marijuana plants, which would trigger a 5-year mandatory minimum. Toepfer said that he understood those consequences but still wanted to go to trial. The court took a short recess before Toepfer indicated that he was ready for the jury.

At trial, defense counsel argued that Toepfer was not involved in the marijuana grow houses implicated in several of the drug counts and that much of the alleged offense conduct was outside the applicable statute of limitations. The jury found Toepfer guilty on Counts 1 and 2 but returned a special verdict finding that those offenses involved fewer than 1,000 marijuana plants. The jury also convicted Toepfer on the two diazepam counts but acquitted him of the seven

remaining counts.  Based on the number of plants found by the jury, Toepfer faced a 5-year mandatory minimum sentence.  See 21 U.S.C. § 841(b)(1)(B)(viii).

Toepfer's presentence sentence investigation report calculated a guidelines range of 121 to 151 months imprisonment, based, in part, on a four-level leadership role enhancement, a two-level enhancement for obstruction of justice, and a determination that he was responsible for 3,744 marijuana plants.  Toepfer objected to the calculation of his sentencing range, arguing that the enhancements were improperly based on acquitted conduct and that he should not be held accountable for more marijuana plants than found by the jury.  He argued that the court was bound by the jury's drug quantity finding based on his alleged agreement with the government, which the trial court purportedly accepted, that the jury's verdict would be binding at sentencing.  The court overruled his objections, adopted the PSR's guidelines calculations, and sentenced Toepfer to 140 months.

With the aid of new counsel on appeal, Toepfer challenged his convictions and sentence on seven grounds, including that the trial court erred in imposing a sentence based on acquitted conduct, criminal acts committed outside the statute of limitations, and a drug quantity greater than that found by the jury.  Toepfer again maintained that the trial court erred in failing to comply with the parties' purported agreement that the jury's drug quantity findings would be binding at sentencing. We affirmed on all grounds and held, in relevant part, that the trial court was

entitled to calculate Toepfer's sentence based on those judge-found facts, that the record did not show that the government and the trial court consented to be bound at sentencing by the jury's drug quantity determination, and that any such agreement would not have precluded the district court from fulfilling its obligations under the sentencing guidelines to make independent factual findings. United States v. Toepfer, 317 F. App'x, 857, 862 (11th Cir. 2008) (unpublished).

After the Supreme Court denied his petition for a writ of certiorari in January 2009, Toepfer filed his § 2255 motion. Toepfer raised three claims relevant to this appeal: (1) his trial counsel was ineffective for misadvising him about the relative sentencing consequences of going to trial or pleading guilty; (2) his decision to forego a guilty plea and proceed to trial was "involuntary," and thus a violation of due process, based on misrepresentations by the government, the trial court, and defense counsel about the sentencing consequences of a conviction at trial; and (3) appellate counsel was ineffective for failing to ensure that the record on appeal was complete. Following an evidentiary hearing, at which Toepfer and trial counsel testified, the district court rejected the ineffective-assistance claims on the merits and rejected the due process challenge as procedurally defaulted. The court, however, granted a COA on each of those claims, which we address in turn.

5

II.

In § 2255 proceedings, we review legal questions de novo and factual findings for clear error.  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  Because claims of ineffective assistance of counsel present mixed questions of law and fact, "[w]e review for clear error the district court's findings of historical facts underlying the claim, and we review de novo the court's decision on the ultimate issue—whether counsel's performance passed constitutional muster."  Conklin v. Schofield, 366 F.3d 1191, 1201 (11th Cir. 2004).

A.

Toepfer claims that his trial counsel, Fred Haddad, rendered ineffective assistance by misadvising him about the sentencing consequences of going to trial, which allegedly caused him to forego a guilty plea that might have substantially reduced his sentence.  He contends that Haddad erroneously advised him that a jury verdict would be binding at sentencing, leading him to believe that his sentence could not be based on acquitted conduct, including conduct outside the applicable statute of limitations, or on a greater drug quantity than that found by the jury.  Toepfer asserts that he would have accepted the trial court's invitation to plead guilty with the prospect of receiving a sentence closer to the 5-year mandatory minimum had he known that obtaining a partial victory at trial,

6

including on a statute-of-limitations defense to some of the acts involved in the charged drug conspiracy, would not benefit him at sentencing.

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that (1) counsel's performance was deficient, falling below an objective standard of reasonableness, and (2) he suffered prejudice as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65 (1986). To prove prejudice in the context of a foregone guilty plea, a prisoner must, at a minimum, establish that there is reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial. See Lafler v. Cooper, 566 U.S. —, 132 S.Ct. 1376, 1385 (2012); Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995).

At the evidentiary hearing, Haddad testified that he advised Toepfer to reject the government's plea offer because it carried a 10-year mandatory minimum sentence, while a complete loss at trial would result in a guidelines sentence of around 11 years. Haddad also testified that he never advised Toepfer that there would be any sentencing benefit to partially prevailing on a statute-of-limitations defense at trial; that he was perfectly aware that "[a]quitted conduct is always countable" for sentencing purposes; and that he urged Toepfer to seriously consider accepting the trial court's invitation to enter an open plea because the court intimated that it would make a finding of fewer than 1,000 plants, which

7

would likely result in a sentence of 6 to 8 years.  Haddad maintained, however, that Toepfer had always and adamantly insisted on going trial, was unwilling to even entertain the possibility of pleading guilty and "admit[ting] to things that he did not do," and believed that he would be acquitted of all charges at trial.  Haddad noted that when he explained the plea options to his client, Toepfer replied, "Fuck them." And when counsel advised Toepfer during the short recess to consider the trial court's invitation to plead guilty, Toepfer became enraged, briefly stormed off, and then stated that he did not want to take a plea and face 6 or 7 years in jail.

The district court, expressly crediting Haddad's testimony and discrediting Toepfer's testimony to the contrary, found that counsel properly informed Toepfer of the relative benefits of pleading guilty, advised Toepfer to consider entering an open plea to avoid a potential 10-year mandatory minimum, and did not misadvise Toepfer that the sentencing judge could not make factual findings outside the jury's verdict.  The court also found that Toepfer adamantly refused to plead guilty, even after the trial judge notified him about the possibility of receiving a lower mandatory minimum sentence, because Toepfer wanted to take a chance at trial.  Based on those credibility determinations and factual findings, the court concluded that counsel's performance was not constitutionally deficient and, even if it were, Toepfer was not prejudiced because he simply had no intention of pleading guilty.

The district court's factual findings are not clearly erroneous, and they belie Toepfer's contentions that trial counsel performed deficiently by giving him inaccurate advice about his sentencing exposure and that he would have pleaded guilty absent that advice.  Credibility determinations are the province of the factfinder and will not be disturbed on appeal unless the testimony credited is "so inconsistent or improbable on its face that no reasonable factfinder could accept it."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).  There is nothing exceedingly improbable or inconsistent about Haddad's testimony, such that we may disregard the district court's decision to credit that testimony over Toepfer's contrary testimony.  And given that credibility determination, the record adequately supports the district court's factual findings that counsel properly advised Toepfer of the relative benefits of pleading guilty in open court and that Toepfer would not have pleaded guilty to the indictment regardless of counsel's advice.  Toepfer has thus failed to demonstrate either deficient performance or a reasonable probability that, but for counsel's advice, he would have pleaded guilty and would not have insisted on going to trial.

Toepfer nevertheless contends that remand is appropriate because the district court denied him a fair evidentiary hearing when it (1) barred his redirect examination of trial counsel, and (2) violated his Fifth Amendment right against self-incrimination by allowing the government, over his objections, to question

9

him in detail about the criminal conduct to which he purportedly would have pleaded guilty.[1]  Neither contention has merit.

Toepfer exhaustively questioned Haddad on direct examination and has not shown that the court abused its discretion in concluding that further examination on redirect was unnecessary, particularly given the substance and brevity of the government's cross-examination, which was less than one-tenth the length of Toepfer's questioning on direct.  See United States v. Rodriquez-Cardenas, 866 F.2d 390, 394 (11th Cir. 1989) ("Decisions regarding the scope of redirect examination . . . will be upset only if there is a clear showing that the district court judge abused his discretion."); see also Fed. R. Evid. 611 (providing that a court should "exercise reasonable control over the mode . . . of examining witnesses" in order to promote factfinding and "avoid wasting time").  Toepfer also had no legitimate basis for invoking the Fifth Amendment privilege against self-incrimination during his cross-examination at the post-conviction hearing.  Once he voluntarily testified at the evidentiary hearing that he would have pleaded guilty to the indictment had counsel adequately advised him, Toepfer could not invoke the privilege to avoid answering questions designed to test the veracity of that claim, especially as his judgment of conviction had already become final.  See

---

[1] Although our review in § 2255 appeals is limited to the issues specified in the COA, we may review procedural issues relevant to the merits of a certified claim, see McCoy v. United States, 266 F.3d 1245, 1248 n.2 (11th Cir. 2001), and the government does not contend that Toepfer's assertions that he was denied a fair evidentiary hearing on his ineffective-assistance claim are beyond the scope of appellate review.  We will therefore address those issues.

Mitchell v. United States, 526 U.S. 314, 322, 326, 119 S.Ct. 1307, 1312 1314 (1999) (explaining that the Fifth Amendment privilege no longer applies "once there can be no further incrimination" because "the sentence has been fixed and the judgment of conviction has become final," and that a witness may not otherwise "testify voluntarily about a subject and then invoke the privilege against self-incrimination [in the same proceeding] when questioned about the details"); see also Clay v. United States, 537 U.S. 522, 527, 123 S.Ct. 1072, 1076 (2003) ("Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filling a certiorari petition expires.").

### B.

Toepfer contends that his due process rights were violated because he made an "involuntary" decision to forego a guilty plea and proceed to trial based on misrepresentations by the government, the trial court, and defense counsel that a jury verdict would be binding at sentence. The district court rejected the claim as procedurally defaulted because Toepfer did not raise it on direct appeal and failed to demonstrate adequate cause to excuse that omission. Toepfer argues that the court misapplied the procedural default rule because he raised the issue on direct appeal and, even if he did not, "such due process involuntariness claims must be

11

reviewed initially" on collateral review absent "special circumstances" where the record on appeal is adequately developed.

A criminal defendant who fails to raise an available challenge on direct appeal is procedurally barred from raising that claim in a § 2255 motion, absent a showing of cause and prejudice or actual innocence. McKay, 657 F.3d at 1196; see also Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). The only generally recognized exception to the procedural default rule concerns claims of ineffective assistance of counsel, which may be brought for the first time on collateral review. Massaro, 538 U.S. at 504, 123 S.Ct. at 1694; see Lynn v. United States, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004). In fact, we generally do not consider ineffective-assistance claims on direct appeal if the district court neither entertained those claims nor developed a sufficient factual record. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002).

Toepfer did not, as he contends, argue on direct appeal that he was denied due process because his decision to go trial was somehow rendered involuntary by alleged misrepresentations about the binding effect of the jury's verdict. And contrary to his suggestion, due process challenges to the voluntariness of a plea decision are routinely raised and decided on direct appeal. See, e.g., United States v. Moriarty, 429 F.3d 1012, 1018–20 (11th Cir. 2005); United States v. Pierre, 120 F.3d 1153, 1156–57 (11th Cir. 1997). Unlike ineffective-assistance claims, there is

no default rule that due process claims must initially be raised on collateral review except in rare circumstances where the factual record is sufficiently developed. Because Toepfer's due process claim is subject to the procedural default rule and he does not suggest that he has shown either cause and prejudice or actual innocence, the district court properly rejected that claim as procedurally barred.[2]

## C.

Toepfer claims that his appellate counsel was ineffective for failing to ensure that the record on appeal was complete and failing to raise a related claim about that incompleteness on direct appeal. Toepfer indicates that the appellate record was missing portions of the trial transcripts, including a second Allen[3] charge that the trial judge purportedly gave to the jury, a pretrial sidebar conversation where the judge asked defense counsel why the case could not be resolved through a guilty plea, and 9 pages from the proceedings held on December 12, 2005.

---

[2] Notwithstanding the procedural default rule, Toepfer's contention that his decision to go to trial was involuntary does not state a cognizable due process violation, at least not under existing law. While due process demands that a defendant make a knowing and voluntary decision to plead guilty because "[a] guilty plea involves the waiver of a number of a defendant's constitutional rights," Moriarity, 429 F.3d at 1019, that requirement has not been extended to a defendant's decision to forego a guilty plea and head to trial, see United States v. Forrester, 616 F.3d 929, 939 (9th Cir. 2010). The Supreme Court has also suggested that, because there is no freestanding constitutional right to a plea bargain, the proper vehicle for challenging an ill-advised decision to forego a guilty plea is through an ineffective-assistance claim under the Sixth Amendment's right to counsel. See Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 1406, 1410 (2010); Lafler, 132 S.Ct. at 1384, 1387. At heart, Toepfer's due process challenge to his decision to go to trial is not a recognizable due process challenge at all, but a recasting of his already rejected ineffective-assistance-of-counsel claim under a different constitutional heading.

[3] Allen v. United States, 164 U.S. 492, 17 S.Ct. 154 (1896).

Claims of ineffective assistance of appellate counsel are governed by the same two-prong standard applicable to trial counsel under Strickland.  Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).  We begin with a "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689, 104 S.Ct. at 2065.  For counsel's performance to be deemed deficient, a movant must show that "no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  In evaluating counsel's performance, we are mindful that appellate counsel is not required "to raise every non-frivolous issue," even ones that may have been meritorious.  Heath, 941 F.2d at 1130.  Because "experienced advocates . . . have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues[,] . . . it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues." Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009).  To establish prejudice in this context, a movant must show that "the neglected claim would have a reasonable probability of success on appeal."  Heath, 941 F.2d at 1131.

Although a defendant is entitled to a record on appeal that includes a complete transcript of the trial proceedings, not every omission from the transcript

14

warrants a new trial.  See United States v. Medina, 90 F.3d 459, 462 (11th Cir. 1996), superseded by statute on other grounds as recognized in United States v. Tinoco, 304 F.3d 1088, 1104–06 (11th Cir. 2002); United States v. Cashwell, 950 F.2d 699, 703 (11th Cir. 1992).  Where, as here, a defendant is represented by different counsel on appeal, a new trial is warranted only "if there is a substantial and significant omission from the trial transcript."  Medina, 90 F.3d at 463.  "There can be no substantial and significant omissions from a record if, taken as a whole, the record affords effective review on appeal."  Id.

Counsel raised seven claims challenging Toepfer's convictions and sentence on direct appeal, including multiple constitutional challenges to the admission of incriminating evidence and numerous claims aimed at the trial court's calculation of his sentence.  Toepfer has not demonstrated that no competent attorney would have elected to focus on those seven claims to the exclusion of an additional claim that the record on appeal was incomplete.  This is particularly true because Toepfer has not shown that any of the identified omissions in the trial transcript either precluded effective appellate review of the issues that were raised on appeal or would have formed the basis for some other meritorious challenge.

Aside from trial counsel's fleeting and equivocal remark at the evidentiary hearing about a "dynamite charge or two," there is no evidence to suggest that the trial judge issued a second Allen charge to the jury before it returned its verdict.

15

Toepfer also has not shown that the 9 pages missing from the December 12, 2005 trial transcript were germane to any of the issues raised on direct appeal, nor has he alleged that the contents of those missing pages would have formed the basis for a meritorious challenge that appellate counsel overlooked.  Finally, the substance of the brief sidebar conversation was identical to the December 5 colloquy in open court, which appellate counsel relied on to bolster his contention that the government and the trial court consented to be bound at sentencing by the jury's drug quantity finding.  We reviewed and rejected that claim on direct appeal, and there is no basis for concluding that the omission of the sidebar conversation hindered our review or that there is a reasonable probability that its inclusion in the record would have altered the outcome of Toepfer's appeal.

Because none of the transcript omissions identified by Toepfer were significant enough to warrant reversal on direct appeal, appellate counsel did not render deficient performance in failing to ensure that they were included in the record on appeal and Toepfer was not prejudiced by any alleged deficiency.

### III.

For these reasons, we affirm the district court's denial of Toepfer's § 2255 motion to vacate sentence.

**AFFIRMED.**

16